King, Boyd King, of Philadelphia, commenced suit in this court against Peter Johnson, and on the 17th of October, 1846, assigned *Page 32 
the debt to Lippincott Way. Judgment was rendered in this case December 9, 1847, for $2,094 75, subject to the opinion of the court on the question of the right of attachment by Iddings, Wells Trotter.
Iddings, Wells Trotter sued out a foreign attachment against King, Boyd King, and laid it in the hands of Peter Johnson, as their garnishee, on the 21st of January, 1847. Judgment was rendered against the garnishee on December 9, 1847, for $2,094 75, subject in like manner.
Messrs. Bayard and Gilpin moved to set aside the first judgment; Messrs. Whitely and Rogers the second.
The parties all resided out of the State and in Pennsylvania, except the garnishee.
Aaron S. Lippincott, examined by the court. — King, Boyd King were doing business in 1846. They made us certain assignments on the 17th of October, 1846, representing to us that they were unable to continue business; they were not then under protest; they owed us $15,797 17; they informed us of their embarrassments before the creditors were called together; a meeting of creditors was held several days after the assignment to us. They proposed to pay less than the amount. The assignments to us were complained of. The debt due to us was what is called in Philadelphia an honorable debt, and which was to be paid before other creditors. The amount of the assignments made to us on the 17th of October, 1846, was $16,394 84. We took these assignments in payment of our claim, if they were collected; if not, they were to make it good. They gave us a guaranty; which is usual. King, Boyd King failed on the 17th of October, 1846. At the first meeting of their creditors, their statement did not show assets amounting to fifty cents in the dollar. The debt of Lippincott Way, or the assignment to them was not included in the statement. The creditors objected to this preference of Lippincott Way. King, Boyd King replied, that ten or fifteen days before they failed, they called on Lippincott Way for assistance, and borrowed money to save themselves; and they considered this an honorable debt. They offered to pay forty cents, though their assets showed about fifty. On being asked to explain this difference, they said that possibly their assignments might not cover the debt due to Lippincott Way, and they must reserve the difference to pay that preferred debt. *Page 33 
 Mr. Gilpin, for the attaching creditors, Iddings, Wells Trotter. — Two questions of importance arise in this case. The courts here have gone to the extent of saying that they would not recognize a foreign assignment in bankruptcy; that is, an assignment in a foreign country; but in regard to assignments under insolvent laws of the several States, the courts of this State will regard the assignment in another State, if it do not conflict with our laws. This is the point to which the decisions, though conflicting, in most of the States are settling.
The question then is, whether such an assignment or preference as this would have been lawful here. It would not: it is expressly prohibited by our law, and regarded as a criminal act. (Dig. 139.) This assignment if not within the letter, is within the spirit of the law which prohibits any transfer of property by a failing debtor, short of an actual payment of the debt. Here was a party, about failing, on the day before failure, assigning to Lippincott Way forty-five debts, to pay their debt of $15,000 and upwards, for money borrowed and goods sold. At the time of this assignment both Lippincott Way, and King, Boyd King all knew the latter were about failing. This preference was illegal. The assignments were to be applied to payment of the debts when collected; and if not collected, King, Boyd King were still liable.
I admit that a failing debtor may pay his debt either in money or property, or by assignment of debts; but it must be an absolute payment, and not a conditional one. Why should the court interfere in favor of Pennsylvania creditors, and enforce a transaction which would be a fraud as between citizens of this State? (1 Harr. Rep. 349, 354, n., Maberry 
Pollard vs. Shissler; 15 Pick. Rep. 17.) The Pennsylvania law, and a decision said to have been made under it recently in the Supreme Court of Pennsylvania, make this kind of assignment void there.
Rogers, for Lippincott Way. — This is a contest between Pennsylvania creditors. An assignment of property, whether general or special, is preferred to a subsequent attachment of the same property. The exception to this is where the place of domicil of the attaching creditor being the same with the forum where the claim is sought to be enforced, the court will prefer the domestic creditor so far as not to send him to a foreign country to enforce his claim; but will refuse to recognize the foreign attachment as against him. But as to assignments in the different States of this Union, the decisions, *Page 34 
though conflicting, recognize and enforce the assignment, unless under peculiar circumstances. The Pennsylvania decisions respect the assignment. (Wharton's Dig. 53; 4 Dall. Rep. 279; 1 Penn. Rep. 117.) What is the law in Delaware? There is no case that contravenes the principle that an assignment is preferred to a subsequent attachment, even of a domestic creditor, much less between foreign claimants. The general principle of the Pennsylvania law is, that an assignment preferring creditors is void. The exception under the act of assembly is of a general assignment in trust. 2. But the counsel go beyond the general question, and seek to bring this case within the penal code of this State. What has that statute to do with a Pennsylvania transaction? and what has this case to do with the law of assignments in insolvency? How can a question of conflict of laws arise between creditors all citizens of one State, and that the State where the contract was made. 3. Is the assignment prohibited by our law? How is it that the court is now called on to give effect to the Pennsylvania assignment? Lippincott Way are not suing here. They are the mere equitable holders of a legal claim by King, Boyd King. The plaintiff in a foreign attachment is in no better condition than the debtor. The case is not within the provisions of our criminal insolvent law, either letter or spirit. The act is obscure, but meant to prevent fraud. No proof of a contemplation of insolvency; or of taking the benefit; but of a state of embarrassment, which, if you please, made it necessary to pay this just
debt; nay, this honorable debt. No matter whether there was a guarantee beyond it or not, it was intended to be a payment of a debt. The nature of the act is of no importance, it is the object and intent. The payment of a debt, whether in money or in property, is not within the act; even if done within the statute; much less out. (3 Harr. Rep. 117.) If a failing debtor may give his bond, or confess a judgment which will cover or take priority, there can be no doubt of his ability to assign a debt, in payment of a just debt.
Whitely, on the same side. — The law of the forum cannot be brought in; the parties are all of the lex loci. The Pennsylvania act of 1843 does not affect the case. Here was a payment of a debt due from King, Boyd King to Lippincott Way, by assignment of debts, which was a perfectly lawful mode of payment in Pennsylvania, even though it prefers one creditor to others. Iddings, Wells Trotter are also Pennsylvania creditors; even then if this *Page 35 
was contrary to our law, the law of the former place would govern. (Story Conf. 335.) But it is not against our law. (3 Harr. Rep. 117.) Our act of fraudulent insolvency relates only to a general assignment by an insolvent, or an actually fraudulent assignment of special property in contemplation of insolvency.
Bayard, in reply. — 1. We do not fully argue the question whether this assignment would be void in Pennsylvania, under the Pennsylvania act of 1843. We ask that question to be reserved until we can produce the case said to have been lately decided by the Supreme Court of that State. 2. As to the validity of the assignment under our act of assembly. The question is, whether a man in insolvent circumstances can make an assignment of his property, or a part of it, as collateral security in payment of a debt. We do not question the right to pay a debt, or to sell property to a creditor; but we deny the right to assign property as collateral security for a debt. The cases cited from Wharton's Digest do not apply, because of this distinction. Is a partial assignment, by a failing debtor, of goods or chattels, rights or credits, void under our act of assembly? I maintain it is; our opponents say the act applies only to general assignments. The law has two branches, one a penal, the other a merely restrictive and remedial; it annuls the transfer as against subsequent attachments. The general object of our insolvent law is to produce or preserve equality of distribution among creditors; one clause punishes the acts prohibited, the other affords a remedy against them. The latter clause must have a liberal construction.
I consider it the right of a failing debtor to pay the debt due to any creditor, either with money or with property; but it must be a payment.
If money or debts be used, it is the same, if the debts be used as money; but if the debts be merely used as a security and transferred, not in payment, so as to extinguish the debt, it falls directly within the mischief and object of the statute. And there is the same danger arising from partial as from general assignments. It would be easy to cut up the latter into the former. Any assignment of a debt to be credited when collected, is a collateral security, and not a payment; and all such are void under our statute. This is the uniform practice and opinion of the bar. The real question in this case then is, whether the debts transferred to Lippincott Way were in payment of the debt due to King, Boyd King, or were only a collateral assignment. This depends not on what they *Page 36 
may call it; the question is, whether the assignment at the time satisfied and extinguished the debt. This assignment was nothing less than a trust, or more; and the act, both ours and the Pennsylvania law, is levelled against assignments in trust. Lippincott Way received these forty-five debts assigned in trust to apply only what was received under the assignment towards their debt, which was not paid until sufficient was received. If more was received, they were trustees as to the balance for King, Boyd King. This is a collateral assignment, and not a payment. There is no doubt as to the fact, that this assignment was made in contemplation of insolvency, if not in a state of actual insolvency. 3. If this assignment is void according to our law and good by the law of Pennsylvania, is it valid when sought to be enforced here against any person, whether a citizen of this State or not. The lex fori never yields to the lex loci, when the contest is against the policy of the State whose process is sought to be used to enforce it. The ground upon which I ask the court to refuse its sanction to a transaction forbidden by our law is not founded upon the fact that the party applying or resisting is or is not a citizen; but it is because it is against the policy of the law of this State, and therefore not to be countenanced or enforced against citizen or stranger. Any act done abroad which if done here would be against our policy and a fraud under our law, cannot be carried out by force of our laws, and by the judgment of our courts. Upon what principle under the Constitution of the United States, can the court hold an act fraudulent and void as against a citizen of this State, and legal and good in this State against a citizen of another State?
By the Court:
The position assumed by the courts of this State, in reference to assignments deemed fraudulent by our laws, though valid in the State where they were made, is this; we do not object to such assignments, unless the question is directly upon them, and we are called on to give them effect here, as transferring property within this jurisdiction. On questions between the assignees, and other claimants of the property here, under unexceptionable liens or conveyances, we hold such assignments void. Thus we recognize discharges in the insolvent courts of Pennsylvania, though based upon assignments preferring creditors, when the question is merely whether the insolvent shall be held to bail or imprisoned here after such discharge; but we hold that the assignment *Page 37 
itself is inoperative to transfer property here; because it is deemed fraudulent by our law. An assignment, therefore, in Pennsylvania, preferring creditors, will not transfer property here.
It was decided in Maberry Pollard vs. Shissler, 1 Harr. Rep. 349, which was the first case on the point, that an assignment in Pennsylvania reserving an interest in the assignor to the prejudice of creditors, would not be sustained against a subsequent attachment of his effects here; and in Hutchinson vs. Gordon, (2 Harr. Rep. 181,) the court said a deed preferring creditors was void, wherever executed, as to its operation on property here. The same principle was held in Fisher
vs. Stayton, [3 Ibid, 271,] though the court gave effect to an insolvent discharge founded on such an assignment.
The first question then is, whether the assignment of King, Boyd 
King to Lippincott Way, of the judgment against Johnson, which was made in contemplation of insolvency, and with a view to prefer the debt due to Lippincott Way, is such an assignment as this court will give effect to, in preference to the subsequent attachment of the Johnson debt by Iddings, Wells Trotter. Such an assignment would be illegal here. It is prohibited by our act against fraudulent insolvency, which provides "that if any person in contemplation of insolvency, shall make an assignment of his estate for the benefit of creditors, and shall by such assignment prefer any creditor to the others, or secure to him a greater proportion of his debt than the others, the assignment shall be deemed fraudulent and absolutely void; and the estate, c., contained in any such assignment shall be liable to be seized for the debts of the assignor." The proof brings this case within that act. The assignment of this judgment was made with a great number of other claims to a large amount, on the day that King, Boyd King failed, and with the avowed purpose of preferring Lippincott Way, whose debt they considered such as ought, in honor, to be favored. There may be nothing wrong in such a preference; circumstances might make it peculiarly proper as between the parties; but it is open to such abuse, and affords such a cover to fraud, that our law prohibits it altogether; deems all such preferences fraudulent; and makes them absolutely void.
We are called on to give force and effect to this assignment: to prefer it to a subsequent lawful attachment of the Johnson judgment. This we cannot do consistently with the policy of our law, and the provisions of the act of assembly. *Page 38 
We think, therefore, that the attaching creditors Iddings, Wells and Trotter, are entitled to judgment on the answer of Peter Johnson, the garnishee.
 Judgment accordingly.